United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON ZOLLER,<br><br>    Plaintiff,<br><br>    v.<br><br>GCA ADVISORS, LLC, et al.,<br><br>    Defendants. | Case No. 19-cv-04804-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 26 |

Before the Court is Defendants' motion to compel arbitration and stay proceedings. ECF No. 26. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

### A. Parties and Claims

Defendant GCA Advisors ("GCA") is a financial services firm and a U.S. subsidiary of GCA Corporation, a Japanese global investment bank. ECF No. 1 ¶ 3. Defendants Robert Hofeditz, Jonathan Jameson, and Reidan Cruz are managing directors in GCA's private funds group. *Id.* ¶¶ 4-6. Defendant Daniel Veatch is a former GCA chief compliance officer, chief financial officer, and managing director. *Id.* ¶ 7.

Plaintiff Shannon Zoller worked as a managing director for GCA and co-founded its private funds group with Defendant Hofeditz. *Id.* ¶¶ 8, 12-14. In 2014 and 2015, Hofeditz recruited his former male colleagues, Jameson and Cruz, to join GCA Advisors. *Id.* ¶¶ 19-20. Thereafter, Defendants allegedly began a "campaign to force Zoller out of the business" and fraudulently reduced Zoller's pay by $50,000. *Id.* ¶¶ 11, 20-21, 45.

Zoller alleges that she was "abruptly fired" in 2016. *Id.* ¶ 26. According to Zoller, she received no negative feedback regarding her performance and was told that her termination was

"for overhead reasons." *Id.* Moreover, Defendants allegedly "engaged in a vicious and unlawful campaign to extort Zoller and force her to sign" a severance agreement which would have released all claims against GCA and reneged on several terms in Zoller's initial employment contract. *Id.* ¶¶ 16, 27-28; *id.* at 41. Defendant Veatch allegedly told Zoller that, if she signed, he would state on post-termination paperwork that she voluntarily resigned in order to avoid "a black mark on [her] record." *Id.* ¶ 33. When Zoller refused, Defendants allegedly filed a Form U5 that stated Zoller "[d]id not meet the expectations of the role." *Id.* ¶ 43.

Zoller filed a complaint with the California Department of Fair Employment and Housing, which issued Zoller a right-to-sue notice on August 13, 2019. *Id.* at 26-38. On August 14, 2019, Zoller filed this action against GCA Advisors, GCA Corporation, Hofeditz, Jameson, Cruz, and Veatch ("Defendants"). *Id.* ¶¶ 3-7. Zoller brings several claims regarding her reduced salary, post-termination payments, the allegedly false Form U5, and discrimination on the basis of sex. *Id.* ¶¶ 50-142.

The complaint alleges sixteen causes of action: (1) violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d); (2) violation of the California Fair Pay Act, Cal. Lab. Code § 1197.5; (3) sex discrimination under the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a); (4) breach of contract; (5) failure to pay wages, Cal. Lab. Code § 200, *et seq.*; (6) waiting time penalties, Cal. Lab. Code § 203; (7) breach of the implied covenant of good faith and fair dealing; (8) quantum meruit/unjust enrichment; (9) promissory estoppel and detrimental reliance; (10) intentional interference with prospective economic advantage; (11) extortion; (12) libel; (13) unfair competition, Cal. Bus. & Prof. Code § 17200; (14) fraud, (15) conspiracy to violate civil rights, 42 U.S.C. § 1985(3); and (16) failure to prevent conspiracy to violate civil rights, 42 U.S.C. § 1986. ECF No. 1 ¶¶ 50-142.

### B. Arbitration Agreement

When Zoller began at GCA on March 10, 2014, she signed a letter outlining the terms of her employment ("Offer Letter"). ECF No. 33 at 11; ECF No. 33-2 at 3. It contained an arbitration provision that stated:

> In the event of any controversy or claim relating to or arising out of

> your employment with the Company, the termination of that employment, this Agreement or its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation of any of this Agreement's provisions, you agree that such dispute shall be exclusively settled by final and binding arbitration pursuant to Section 9 of the Confidentiality, Non-Solicitation and Arbitration Agreement attached hereto as Exhibit A.

ECF No. 33-2 at 8. The Offer Letter incorporated Section 9 of the Employee Confidentiality, Non-Solicitation, and Arbitration Agreement:

> Both the Company and I agree that any controversy or claim relating to or arising out of my employment with the Company, the termination of my employment, the Letter Agreement governing my employment with the Company or its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation in connection with Letter Agreement's provisions, shall be exclusively settled by final and binding arbitration pursuant to the NASD Code of Arbitration Procedure for Industry Disputes (the "Code") then in effect, or any successor to that Code then in effect. The obligation to arbitrate such claims will survive the termination of the Letter Agreement. Judgment on any award rendered by the arbitrator(s) may be entered and enforced by any court having jurisdiction thereof.[1]

*Id.* at 12. The parties are subject to the governing rules of the Financial Industry Regulatory Authority ("FINRA"), the successor to the NASD Code referenced in the Arbitration Agreement.[2] ECF No. 26 at 10; ECF No. 33 at 11. As required by FINRA, Zoller also signed a Form U4 at the outset of her employment. ECF No. 33-2 at 3. The Form U4 contained an arbitration provision stating:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

ECF No. 26-1 at 21. Defendants assert that the term "SROs" includes FINRA, a "self-regulatory organization." ECF No. 26 at 11. Generally, FINRA Rules require arbitration for disputes that

---

[1] The Court refers to the Offer Letter and the Employee Confidentiality, Non-Solicitation and Arbitration Agreement collectively as the "Arbitration Agreement."

[2] FINRA succeeded NASD in 2007. To avoid confusion, the Court refers to the NASD Code as the FINRA Rules.

3

"arise out of the business activities of a [FINRA] member or an associated person . . . ." ECF No. 33-1 at 19; FINRA Rule 13200(a). The FINRA Rules do not require arbitration of statutory claims of employment discrimination. ECF No. 33-1 at 6. Rule 13201(a) states: "Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose." *Id.* Additionally, FINRA Rules require that members provide a written arbitration disclosure to any associated person asked to sign a Form U4 that states:

> A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

ECF No. 33-1 at 74; FINRA Rule 2263(2). Zoller asserts that she received this disclosure at the outset of her employment with GCA. ECF No. 33 at 10-11.

### C. Stipulation and Motion to Compel Arbitration

On November 26, 2019, the parties filed a joint stipulation that eleven of Zoller's claims – claims four through fourteen, which do not assert statutory employment discrimination or civil rights violations – should be compelled to arbitration before FINRA and stayed pending the outcome of the arbitration of those claims. ECF No. 25 ¶¶ 3-4. Zoller did not agree that the remaining five claims should be compelled to arbitration. *Id.* ¶ 4. The remaining claims are: (1) violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d); (2) violation of the California Fair Pay Act, Cal. Lab. Code § 1197.5; (3) sex discrimination under FEHA, Cal. Gov't Code § 12940(a); (4) conspiracy to violate civil rights, 42 U.S.C. § 1985(3); and (5) failure to prevent conspiracy to violate civil rights, 42 U.S.C. § 1986. ECF No. 1 ¶¶ 50-60, 131-142.

On the same day the parties filed the joint stipulation, Defendants filed this motion to compel arbitration and stay proceedings for all claims, including the five claims omitted from the parties' stipulation. ECF No. 26. Zoller filed an opposition on December 18, 2019. ECF No. 33. Defendants filed a reply on January 9, 2020. ECF No. 34.

Defendants argue that Zoller agreed to arbitrate her employment discrimination claims by signing the Arbitration Agreement; they assert that the broad language requiring arbitration of

4

"any controversy or claim" arising out of Zoller's employment encompasses discrimination claims. ECF No. 26 at 7. Defendants further argue that the Arbitration Agreement satisfied FINRA's requirement that parties agree to arbitrate discrimination claims before they may be compelled to do so. *Id.*

Zoller counters that she did not agree to arbitrate discrimination claims. ECF No. 33 at 10. She references the Ninth Circuit's "knowing waiver standard" and asserts that any agreement to do so would have required an explicit waiver. ECF No. 33 at 20-26. Zoller further notes that the disclosure she received at the outset of employment explained that FINRA Rules did not require arbitration of employment discrimination, reinforcing her belief that she was not agreeing to arbitrate discrimination claims. ECF No. 33 at 12-13; ECF No. 33-2 at 3-4.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1332, and 1343.

## III. LEGAL STANDARD

The Federal Arbitration Agreement ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). An arbitration clause may be revoked by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

A party bound by an arbitration clause may bring a petition in the district court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

5

issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

When deciding whether a valid arbitration agreement exists, federal courts generally should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV. DISCUSSION

### A. Arbitrability of Stipulated Claims

The parties agree that the Arbitration Agreement is valid and enforceable as it pertains to Zoller's non-discrimination claims. *See* ECF No. 33 at 11; ECF No. 34 at 8. As registered brokers, the parties are bound by FINRA Rules, which generally require arbitration of disputes between members and associated persons, except for employment discrimination disputes. *See* FINRA Rule 13200(a), 13201(a); ECF No. 33-1 at 6, 19. The parties have stipulated that Zoller's non-discrimination claims should be compelled to arbitration. ECF No. 25. Per the parties' joint stipulation, the Court grants the motion to compel arbitration for Zoller's causes of action four through fourteen, ECF No. 1 ¶¶ 66-130. The Court will discuss a stay of these claims after addressing the arbitrability of Zoller's remaining five claims.

### B. Arbitrability of Remaining Claims

Zoller's remaining five claims are federal and state statutory discrimination and civil rights claims arising under the Equal Pay Act, California Fair Pay Act, FEHA, and the Civil Rights Act of 1871. *Id.* ¶¶ 50-65, 131-142. Zoller alleges that Defendants discriminated against her on the basis of sex by reducing her pay, excluding her from business activities, and terminating her employment. *Id.* The validity of Zoller's Arbitration Agreement is not in dispute. ECF No. 33 at 11; ECF No. 34 at 8. The only question the Court must address is whether the arbitration provisions encompass Zoller's five statutory discrimination and civil rights claims.

### 1. Incorporation of FINRA Rules

The Court first addresses the extent to and manner in which the Arbitration Agreement incorporates the FINRA Rules. The agreement states that controversies "shall be exclusively settled by final and binding arbitration pursuant to [FINRA Rules]." ECF No. 33-2 at 12. The parties dispute the meaning of the term "pursuant to." ECF No. 34 at 14-17; ECF No. 33 at 23-24. Zoller argues that the Arbitration Agreement "fully incorporates the FINRA [R]ules," ECF No. 33 at 24, including specifically FINRA Rule 13201(a), which provides that "a claim alleging employment discrimination . . . in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it . . . ." ECF No. 33-1 at 19. Defendants suggest that the reference to FINRA simply "indicate[s] the forum and means by which arbitration [will] occur," ECF No. 34 at 16 (citing *Zeller-Landau v. Sterne Agee CRT, LLC*, No. 17-3962, 2018 WL 334970, at \*6 (E.D. Pa. Jan. 9, 2018)), such that "every claim in Zoller's complaint" is still required to be arbitrated pursuant to the Arbitration Agreement, ECF No. 26 at 15.

The Court finds that the reference to the FINRA Rules was meant to augment rather than supplant the terms of the Arbitration Agreement. Where "parties [do] not specifically limit the agreement to arbitrate to those matters that [FINRA] rules require[] to be arbitrated," a mere reference to the FINRA Rules does not determine the scope of arbitrable claims.[3] *ING Fin. Partners v. Johansen*, 446 F.3d 777, 779-81 (8th Cir. 2006) (finding that language stating that disputes will be resolved "in accordance with the rules of the [FINRA]" means only that the parties will follow FINRA procedural rules); *see also Bailey v. Chase Sec., Inc.*, No. 01-CIV. 7222(AGS), 2002 WL 826816, at \*3 (S.D.N.Y. May 1, 2002) (finding that an agreement to arbitrate "in accordance with" FINRA Rules existed independent of the parties' association with FINRA). Thus, the Arbitration Agreement's reference to the arbitration of claims "pursuant to [FINRA Rules]" does not determine the scope of arbitrable claims.

---

[3] The Court references *ING Financial Partners* and similar cases for guidance in interpretation of the incorporation of FINRA Rules only, as those cases are not governed by Ninth Circuit requirements regarding arbitration of employment discrimination claims. *See* ECF No 26 at 17-18.

Moreover, this interpretation comports with the established canon of avoiding contractual interpretations that render a portion of the contract superfluous. *See, e.g.*, *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004). Zoller signed a Form U4 with its own arbitration provision agreeing to arbitrate all disputes FINRA requires to be arbitrated. ECF No. 26-1 at 21. An additional agreement would be superfluous if it were simply intended to restate that obligation. Thus, the reference to FINRA here "relate[s] only to the manner in which the arbitration shall be conducted, not which matters are subject to arbitration." *See ING Fin. Partners*, 446 F.3d at 779.

Zoller assumes the Arbitration Agreement fully incorporates FINRA Rules. ECF No. 33 at 24. She therefore spends a substantial portion of her opposition brief discussing FINRA Rule 13201(a), which does not require arbitration of discrimination claims unless the parties agree to do so. *See id.* at 14-17. Because the reference to FINRA Rules "mean[s] only that the parties will follow [FINRA] procedural rules," the Court need not address the specific requirements of FINRA Rule 13201(a). *See ING Fin. Partners*, 446 F.3d at 780. Instead, the Court is tasked only with interpreting the Arbitration Agreement under the FAA.

### 2. Arbitration for Statutory Civil Rights Claims Requires "Knowing Waiver" of a Judicial Forum

Next, the Court will discuss whether the Arbitration Agreement encompasses Zoller's five statutory discrimination and civil rights claims. Zoller argues that, absent language specifically subjecting discrimination claims to arbitration, there was no agreement to arbitrate such claims. ECF No. 33 at 20. Defendants respond that courts have rejected a "knowing waiver" requirement for statutory discrimination claims. ECF No. 34 at 11. Thus, Defendants argue the court must interpret the "any controversy or claim" language of the Arbitration Agreement to include discrimination claims. ECF No. 34 at 10-11. The Court finds that Zoller has the better argument and that the Ninth Circuit's "knowing waiver" standard applies to Zoller's statutory discrimination and civil rights claims arising under the Equal Pay Act, California Fair Pay Act, FEHA, and the Civil Rights Act of 1871.

Though the FAA generally favors arbitrability, the "scope of the FAA is narrowed by other

8

federal statutes, . . . which 'limit the enforcement of arbitration agreements with regard to claims arising under th[ose] statute[s].'" *Ashbey v. Archstone Prop. Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (quoting *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998)). The Ninth Circuit has held that Congress intended such limited enforcement with regard to statutory discrimination and civil rights claims. In *Nelson v. Cyprus Bagdad Copper Corp.*, the court held that "[a]ny bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." 119 F.3d 756, 762 (9th Cir. 1997). In *Prudential Insurance Co. of America v. Lai*., the court held that there must be a "knowing agreement" before an employee could be forced to arbitrate discrimination claims under Title VII and related state statutes. 42 F.3d 1299, 1305 (9th Cir. 1994). In a subsequent Ninth Circuit case applying this "knowing waiver" standard, the court refused to compel FINRA arbitration of a plaintiff's sexual harassment claims because there was no "express waiver of the statutory remedies in the written agreement executed by the plaintiff." *Renteria v. Prudential Ins. Co. of America*, 113 F.3d 1104, 1106-08 (9th Cir. 1997).

In finding that Congress intended a "knowing waiver" standard as it pertains to Title VII and analogous state statutes, the Ninth Circuit noted that the requirement "reflects our public policy of protecting victims of sexual discrimination and harassment . . . a policy that is at least as strong as our public policy in favor of arbitration." *Lai*, 42 F.3d at 1305. The court acknowledged that plaintiffs subject to arbitration "do not 'forego the substantive rights afforded by the statute.'" *Id.* (quoting *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Still, the court reasoned that "the remedies and procedural protections available in the arbitral forum can differ significantly from those contemplated by the legislature." *Id.* The court added that "in an area as personal and emotionally charged as sexual harassment and discrimination, the procedural right to a hearing before a jury of one's peers, rather than a panel of the [FINRA], may be especially important." *Id.* at 1305 n.4.

Since the Ninth Circuit's holdings in *Nelson, Lai,* and *Renteria*, courts in this jurisdiction have reaffirmed and applied the knowing waiver standard to statutory civil rights and

discrimination claims. *See Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902, 913 (N.D. Cal. 2011) ("[T]he personal decision to waive the right to a judicial forum must have been knowingly made, at least where, as here, statutory employment rights are at issue."); *Simmons v. Morgan Stanley Smith Barney, LLC.*, 872 F. Supp. 2d 1002, 1013-14 (S.D. Cal. 2012) ("[O]nly knowing waivers of statutory employment discrimination claims are enforceable."); *see also Kummetz*, 152 F.3d at 1155 (concluding that plaintiff did not knowingly agree to arbitrate his claim under the Americans with Disabilities Act ("ADA")); *Berdechowski v. Reach Group, LLC.*, No. 1:16-CV-00177-LJO-JLT, 2016 WL 3167649, at *3 (E.D. Cal. June 7, 2016) (finding that plaintiff did not knowingly waive Title VII and FEHA claims); *Bohnert v. Roman Catholic Archbishop of S.F.*, 136 F. Supp. 3d 1094, 1117 (N.D. Cal. 2015) (same).

The Court now turns to Zoller's specific claims.

### a. FEHA (Claim 3)

Zoller alleges that GCA violated FEHA and engaged in sex discrimination by paying her lower wages than her male colleagues, terminating her employment, refusing to pay her post-termination revenue, and submitting a false Form U5. ECF No. 1 ¶ 61-65; Cal. Gov't Code § 12940(a). The Court will apply the knowing waiver standard to Zoller's FEHA claim.

The Ninth Circuit has "concluded that Congress intended there to be a knowing waiver of statutory employment discrimination remedies." *Simmons*, 872 F. Supp. 2d at 1013 (citing *Renteria*, 113 F.3d at 1108). The Ninth Circuit has also extended the knowing waiver requirement to both Title VII discrimination claims and related state law claims, such as those brought under FEHA. *Lai*, 42 F.3d at 1303 n.1 ("Parallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme."); *see Renteria*, 113 F.3d at 1106 n.1 (noting that knowing waiver standard applies to state-discrimination laws parallel to Title VII); *Ashbey*, 785 F.3d at 1324 n.2 ("This 'knowing' standard applies to Title VII's state-law equivalents also.").

Moreover, courts within the Ninth Circuit routinely apply the knowing waiver standard to FEHA claims. *See, e.g., Simmons*, 872 F. Supp. 2d at 1013 (finding that the arbitration agreements did not encompass plaintiff's FEHA claim because "only knowing waivers of statutory employment discrimination claims are enforceable"); *Berdechowski*, 2016 WL 3167649,

at *3 (finding that "compelling arbitration is inappropriate" where Plaintiff did not "knowingly waive" her right to a judicial forum as to her Title VII and FEHA claims); *Harris v. Halliburton Co.*, No. 1:16-cv-00281-LJO-JLT, 2016 WL 4204604, at *1 (E.D. Cal. Aug. 9, 2016) (finding that "Plaintiff made a knowing waiver of his right to a judicial forum of his claims," including his FEHA claim); *but see Peoples v. Children's Hosp. of Cent. Cal.*, 1:19-cv-00272LJO-SKO, 2020 WL 469338, at *1, *3 (E.D. Cal. Jan. 29, 2020) (rejecting plaintiff's argument that FEHA claims require an explicit waiver).

Defendants cite *Delmore v. Ricoh Americas Corp.* for the proposition that "the 'knowing waiver' standard has been rejected within the Ninth Circuit." ECF No. 34 at 11-12 (citing 667 F. Supp. 2d 1129, 1138-39 (N.D. Cal. 2009)). The Court in *Delmore* "look[ed] to relevant state law" and found that California state courts have "refused to extend the 'knowing waiver' standard" to "arbitration agreements that apply to FEHA claims." *Id.* 1138-39. The Ninth Circuit, however, has previously rejected this precise reasoning. *See Renteria*, 113 F.3d at 1107-08. In *Renteria*, the Ninth Circuit explained that a state law approach to knowing waiver of Title VII and related state law claims "misconceives" the court's jurisprudence. *Id.* "State law cannot weaken the protections this court has concluded Congress intended to create" and thus state law "adds nothing to the equation." *Id.* at 1108; *see also Simmons*, 872 F. Supp. 2d at 1013 ("[O]nly knowing waivers of statutory employment discrimination claims are enforceable because that requirement is based on Congressional intent, not a state judicial rule."). This Court can find no court following *Delmore*, and it simply cannot be reconciled with *Renteria*. *See also Berdechowski*, 2016 WL 3167649, at *3 (declining to enforce arbitration provision where the "Employment Agreement and arbitration clause do not address waiver of Plaintiff's civil rights or at all mention Title VII or FEHA").

Defendants also suggest that the application of the knowing waiver standard "fail[s] to address the federal policy to interpret arbitration agreements . . . in favor of arbitration." ECF No. 34 at 13. Defendants' argument, however, fails to acknowledge that the Ninth Circuit addressed this federal policy in its creation of the knowing waiver standard and found that the policy of protecting victims of sexual discrimination is "at least as strong as our public policy in favor of

11

arbitration." *Lai*, 42 F.3d at 1305. The Ninth Circuit has held that "waiver must be knowing, notwithstanding federal policy favoring arbitration." *Renteria*, 113 F.3d at 1108.

### b. Equal Pay Act and California Fair Pay Act (Claims 1 and 2)

Zoller also brings sex discrimination claims under the Equal Pay Act, 29 U.S.C. § 206(d), and the analogous[4] California Fair Pay Act, Cal. Lab. Code § 1197.5. ECF No. 1 ¶¶ 50-60. Both statutes prohibit an employer from paying lower wages to an employee of one sex than to similarly situated employees of another sex. Zoller alleges that GCA violated these statutes by paying her "lower wages than male employees in substantially equal jobs and in the same job as Managing Director, even though [she] performed the same or similar duties." ECF No. 1 ¶¶ 52, 59.

The Court is unaware of cases directly addressing the application of the knowing waiver standard to claims under the Equal Pay Act and related state statutes. In *Renteria*, the Ninth Circuit noted that the "*Lai* knowing waiver requirement applies only to a comparatively small class of claims arising under Title VII or similar laws—and derives from a recognition of the importance of the federal policy of protecting the victims of discrimination." 113 F.3d at 1107. In *Lai*, the Ninth Circuit recognized that "Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII *and other applicable state and federal statutes.*" 42 F.3d at 1304 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47-48 (1974)) (emphasis added). Courts have since applied the knowing waiver standard to other statutory employment civil rights and discrimination claims, including the ADA. *See Nelson*, 119 F.3d at 762; *Kummetz*, 152 F.3d at 1155 (applying the knowing waiver standard to the ADA and the Arizona Civil Rights Act); *Castro v. Macy's, Inc.*, No. C 16-5991 CRB, 2017 WL 344978, at *1 (N.D. Cal. 2017) (applying the knowing waiver standard to FEHA, ADA, and the Age

---

[4] *Compare* 29 U.S.C. § 206(d) ("No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .") *with* Cal. Lab. Code § 1197.5 ("An employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions . . . ."

12

Discrimination in Employment Act). In expanding the knowing waiver requirement to the ADA, the Ninth Circuit held that "*[a]ny* bargain to waive the right to a judicial forum *for civil rights claims*" must be express. *Nelson*, 119 F.3d at 762 (emphasis added).

The Equal Pay Act and analogous state statutes are encompassed by both the plain language and the spirit behind the knowing waiver requirement. The Equal Pay Act protects a statutory civil right covered plainly by the language in *Nelson*. 119 F.3d at 762 ("Any bargain to waive the right to a judicial forum for *civil rights claims* . . . in exchange for employment or continued employment must . . . be express.") (emphasis added). The Equal Pay Act also protects the same substantive civil right as the relevant provision of Title VII – the right to be free from employment discrimination on the basis of sex. *Compare* 42 U.S.C. § 2000e-2 (prohibiting employers from discriminating "against any individual with respect to his compensation . . . because of such individual's . . . sex" *with* 29 U.S.C. § 206(d) (prohibiting employers from discriminating on the basis of sex by paying lower wages for similar work); *see also Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 266 (3d Cir. 1970) ("[B]oth statutes serve the same fundamental purpose against discrimination based on sex."). "[A]ny violation of the Equal Pay Act is also a violation of [T]itle VII," 29 C.F.R. § 1620.27, and the Equal Pay Act is often construed together with Title VII.[5] Moreover, the application of the knowing waiver requirement to the Equal Pay Act serves the "federal policy of protecting the victims of discrimination." *Renteria*, 113 F.3d at 1107 (The "knowing waiver requirement . . . derives from a recognition of the importance of the federal policy of protecting the victims of discrimination."). Therefore, the Court will apply the knowing waiver standard to Zoller's Equal Pay Act claim.[6]

---

[5] *See, e.g.*, *Shultz*, 421 F.2d at 266 (holding that Title VII is in *pari materia* with the Equal Pay Act because both statutes serve the same fundamental purpose); *Usery v. Bettendorf Cmty. School Dist.*, 423 F. Supp 637, 639 (S.D. Iowa 1976) (noting that Equal Pay Act and Title VII should be read together because both serve the same fundamental purpose); *Hodgson v. Corning Glass Works*, 330 F. Supp. 46, 49 (W.D.N.Y. 1971) (stating that "principles growing out of the cases arising under Title VII" are applicable to cases under the Equal Pay Act "since the purpose of both Acts is to eliminate employment discrimination.").

[6] The Court acknowledges the Ninth Circuit's holding in *Kuehner v. Dickinson & Co.* but finds that it does not apply here. 84 F.3d 316, 319-20 (9th Cir. 1996). In *Kuehner*, the court found the

13

The knowing waiver requirement also extends to Zoller's analogous anti-discrimination claim brought under the California Fair Pay Act, Cal. Lab. Code § 1197.5. ECF No. 1 ¶¶ 57-60. As the Ninth Circuit established in *Nelson*, "*[a]ny* bargain to waive the right to a judicial forum for *civil rights claims*" must be express. *Nelson*, 119 F.3d at 762 (emphasis added). This mandate includes "parallel state anti-discrimination laws." *See id.* (finding that a state discrimination law parallel to the ADA was subject to the knowing waiver standard); *Kummetz*, 152 F.3d at 1156 ("The question whether [plaintiff] waived his rights under the [Arizona Civil Rights Act] is governed by the same standard as the question whether he waived his rights under the ADA.").

### c. Civil Rights Act of 1871

Finally, Zoller brings claims under the Civil Rights Act of 1871, for conspiracy to violate civil rights and failure to prevent such conspiracy. ECF No. 1 ¶¶ 131-142; 42 U.S.C. §§ 1985(3), 1986. To determine whether the knowing waiver standard applies to these claims, the Court need go no further than the language of *Nelson*, which applies the standard to "[a]ny bargain to waive the right to a judicial forum for *civil rights claims*." *Nelson*, 119 F.3d at 762 (emphasis added).

In sum, the Court finds that the Ninth Circuit's knowing waiver standard applies to each of Zoller's statutory civil rights and discrimination claims. These claims all stem from the same allegation – that Defendants were "motivated by discriminatory animus against women." ECF No. 1 ¶ 133. A finding that a knowing waiver is required for the arbitration of Zoller's FEHA claim but not her remaining civil rights claims, all of which arise from the same core allegation of employment sex discrimination, would conflict with both Ninth Circuit precedent and the "federal policy of protecting the victims of discrimination." *Renteria*, 113 F.3d at 1107; *see also Lai* 42 F.3d at 1305.

---

plaintiff did not meet her burden of showing congressional intent to impose a knowing waiver requirement for FLSA claims. *Id.* at 320. The FLSA includes the Equal Pay Act. *See* 29 U.S.C. §§ 201-19. However, the plaintiff in *Kuehner* did not bring a discrimination or civil rights claim under the Equal Pay Act provision of the FLSA; she brought a claim alleging unpaid minimum wages, overtime, and wrongful discharge. *Kuehner*, 84 F.3d at 318. The Equal Pay Act, on the other hand, fits squarely within the language of *Nelson* and prior Ninth Circuit holdings that Congress intended to restrict the enforcement of contracts to arbitrate discrimination and civil rights claims. *See Nelson*, 119 F.3d at 762; *Renteria*, 113 F.3d at 1107.

### 3. Zoller Did Not Expressly Waive Her Right to a Judicial Forum for Statutory Civil Rights Claims

Having established that the "knowing waiver" requirement applies to each of Zoller's remaining claims, the Court now addresses whether Zoller knowingly waived her right to a judicial forum for employment discrimination claims when she signed the arbitration agreement with GCA. The Court finds no knowing waiver here.

Under the knowing waiver standard, "[a]ny bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Nelson*, 119 F.3d at 762. Where "nothing . . . put[s] [an employee] on notice that . . . he was somehow entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute," the right has not been waived. *Id.* Thus, courts applying the knowing waiver standard place significant weight on the specificity of the language in the agreement. *See Simmons*, 872 F. Supp. 2d at 1012-13 (holding that a broad agreement to arbitrate did not encompass plaintiff's federal and state civil rights claims); *Berdechowski*, 2016 WL 3167649, at *3 (finding plaintiff did not waive civil rights claims because the "too-general waiver" "[did] not address waiver of [p]laintiff's civil rights or at all mention Title VII or FEHA"); *Castro*, 2017 WL 344978, at *4 (finding plaintiff knowingly waived her right to a judicial forum for civil rights claims because the arbitration agreement contained "explicit language" notifying the reader that it applied to such claims).

Courts within the Ninth Circuit have found a knowing waiver of the right to a judicial forum where an arbitration clause explicitly refers to statutory discrimination or civil rights claims. *See Ashbey*, 785 F.3d at 1325-26 (finding knowing waiver of plaintiff's Title VII and equivalent state law claims where the arbitration provision applied to disputes arising out of the employment relationship "including, without limitation, disputes over . . . harassment and claims arising under the . . . Civil Rights Act of 1964." (ellipses in original)); *Castro*, 2017 WL 344978, at *4 (finding knowing waiver where the arbitration agreement "explicitly notified any reader" that it covered all employment-related claims, including "claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the

15

amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), … state discrimination statutes, state statute, and or/common law regulating employment termination . . . ." (first ellipsis in original)); *Halliburton Energy Srvs., Inc. and Halliburton Energy Co.'s Memorandum of Points and Authorities in Support of Motion to Compel Arbitration*, *Harris v. Halliburton Co.*, 1:16-cv-00281-LJO-JLT, 2016 WL 4204604, at *4. (E.D. Ca. 2016), ECF No. 10-1 (finding knowing waiver where a dispute resolution program covered "allegations of discrimination based on race [or] sex; … sexual or other kinds of harassment . . . .") (first ellipsis in original).

On the other hand, courts generally find that broad language requiring arbitration of "any dispute," "controversy," or "claim" is not specific enough to create a knowing waiver.[7] *See Simmons*, 872 F. Supp. 2d at 1009, 1013 (denying motion to compel arbitration as to plaintiff's discrimination claims where plaintiff agreed to arbitrate "[a]ny controversy or claim"); *Berdechowski*, 2016 WL 3167649, at *3 (finding the waiver "too-general" and denying motion to compel arbitration where the agreement did "not address waiver of Plaintiff's civil rights or at all mention Title VII or FEHA."); *Renteria*, 113 F.3d at 1106, 1108 (affirming denial of motion to compel arbitration and finding "no express waiver of the statutory remedies" where the agreement required arbitration of "any dispute, claim or controversy"); *but see Dylag v. West Las Vegas Surgery Center, LLC*, 719 F. App'x 568, 570 (9th Cir. 2017) ("By entering into an employment contract with an arbitration provision that encompasses 'any dispute aris[ing] out of' that contract, [plaintiff] knowingly bargained away his right to litigate his ADEA and ADA claims.").

In *Simmons*, for instance, the plaintiff signed two bonus agreements and two promissory notes which stated that "any controversy or claim arising out of or relating to" the agreements and notes "shall be settled by arbitration in accordance with the rules of [FINRA]." *Simmons*, 872 F. Supp. 2d at 1009-10. The plaintiff also signed a Form U4, under which she "agree[d] to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any

---

[7] Henry S. Kramer, *Alternative Dispute Resolution in the Workplace* 6-28.1 (2004) ("To be enforced in the Ninth Circuit, coverage of statutory claims must be explicit. The absence of a knowing waiver will bar state law to the contrary, at least as to discrimination claims.").

16

other person that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [registered in the Form U4]." *Id.* at 1009. The court found the "arbitration provisions [did] not state that Plaintiff waived his right to a jury trial on a claim of statutory employment discrimination." *Id.* at 1013. Thus, the plaintiff did not "knowingly forego[]" his statutory remedies on his "statutory employment discrimination claims," and the arbitration agreements did "not encompass" these claims. *Id.*

Here, as in *Simmons*, "the arbitration provisions do not state that [Zoller] has waived [her] right to a jury trial on a claim of statutory employment discrimination." *See id.* at 1013. Zoller's "too-general waiver" included no explicit reference to statutory civil rights or discrimination claims. *See Berdechowski*, 2016 WL 3167649, at *3. Moreover, when GCA asked Zoller to sign her Offer Letter, it also tendered a FINRA Rule 2263 disclosure reminding her that a "claim alleging employment discrimination . . . in violation of a statute is not required to be arbitrated under FINRA rules" and may be arbitrated at FINRA "only if the parties have agreed to arbitrate it." ECF No. 33-2 at 3-4 (internal quotation marks omitted). Neither the language of the Arbitration Agreement nor the surrounding circumstances put Zoller "on notice that . . . [she] was somehow entering into an agreement to waive a specific statutory remedy afforded [her] by a civil rights statute." *See Nelson*, 119 F.3d at 762; ECF No. 33-2 at 3-4. Therefore, Zoller did not knowingly waive her statutory discrimination claims, and "compelling arbitration is inappropriate." *Berdechowski*, 2016 WL 3167649, at *3.

Defendants argue that the arbitration provisions in *Simmons* were narrower in scope than GCA's Arbitration Agreement because they required arbitration of claims arising out of "this Agreement" rather than "employment or termination." ECF No. 34 at 12-13. This argument is unpersuasive. Like Zoller, the plaintiff in *Simmons* signed arbitration provisions in numerous documents. The fact that the language of the provisions stated "arising out of or relating to this agreement" or "this note" had no bearing on the court's analysis of knowing waiver. *See Simmons*, 872 F. Suppl. 2d at 1013. Instead, the court's analysis rested on the fact that the four agreements signed by the plaintiff did not mention statutory discrimination claims. *Id.*

17

**C. Stay**

Defendants move to stay the litigation of all claims, including those the Court finds unsuitable for arbitration. ECF No. 26 at 18. Defendants argue that allowing some claims to proceed "would require the parties to litigate a closely related issue" in two separate forums. ECF No. 34 at 19-20. Zoller opposes Defendants' request and urges the Court to allow her to proceed with her discrimination claims. ECF No. 33 at 26.

The FAA provides that:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Where, as here, a plaintiff asserts both arbitrable and nonarbitrable claims, "district courts have discretion whether to proceed with the nonarbitrable claims before or after the arbitration and [have] … authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 870 (N.D. Cal. 2015) (ellipsis in original) (citation and internal quotations omitted); *see Leyva v. Certified Grocers of Cal., Lt.d*, 593 F.2d 857, 863 (9th Cir. 1979) (noting that "sound reasons may exist" for the district court to stay the action for nonarbitrable claims based on its power to control its own docket and "provide for the prompt and efficient" resolution of cases). However, "once it is decided that two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 225 (White, J., concurring).

Zoller's non-discrimination claims, causes of action four through fourteen, are arbitrable. ECF No. 1 ¶¶ 66-130. The Court will thus stay the proceeding pending the outcome of the arbitration of those claims, as required under the FAA and as stipulated by the parties. ECF No. 25. Zoller's discrimination claims are not arbitrable and are severable from her remaining claims. *See* ECF No. 1 ¶¶ 66-130 (alleging breach of contract, fraud, failure to pay wages, promissory

estoppel, unjust enrichment, etc.). While the Court acknowledges that certain claims may require litigation of overlapping facts, such as the reasons for Zoller's termination, the claims are largely distinct. *See Simmons*, 872 F. Supp. 2d at 1021-22 (denying stay for plaintiff's nonarbitrable civil rights claims but granting stay for plaintiff's arbitrable claims for fraud, breach of contract, wrongful termination, and request for temporary restraining order). Accordingly, the Court will not stay proceedings for causes of action one, two, three, fifteen, and sixteen.

## CONCLUSION

The Court GRANTS the motion to compel arbitration and stay proceedings for Zoller's eleven non-discrimination claims as stipulated by the parties. ECF No. 1 ¶¶ 66-130. The knowing waiver requirement applies to Zoller's remaining statutory civil rights claims, and Zoller did not knowingly waive her right to a judicial forum for such claims. Therefore, the Court DENIES Defendants' motion to compel arbitration and stay proceedings as to claims one, two, three, fifteen, and sixteen. *Id.* ¶¶ 50-65, 131-142.

**IT IS SO ORDERED.**

Dated: March 5, 2020



JON S. TIGAR
United States District Judge