FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHANNON ZOLLER,<br>    *Plaintiff-Appellee*,<br><br>v.<br><br>GCA ADVISORS, LLC; ROBERT HOFEDITZ; JONATHAN JAMESON; REIDAN CRUZ; DANIEL VEATCH,<br>    *Defendants-Appellants*,<br><br>and<br><br>GCA CORPORATION,<br>    *Defendant*. | No. 20-15595<br><br>D.C. No.<br>4:19-cv-04804-JST<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted January 12, 2021
San Francisco, California

Filed April 14, 2021

Before:  J. Clifford Wallace and Milan D. Smith, Jr., Circuit Judges, and Jane A. Restani,[*] Judge.

Opinion by Judge Wallace

## SUMMARY[**]

### Arbitration

The panel reversed the district court denial of defendants' motion to compel arbitration of statutory employment discrimination and civil rights claims, and remanded with the direction that all claims be sent to arbitration and the case be dismissed without prejudice.

When Shannon Zoller became an investment banker with GCA Advisors, LLC, she signed an employment contract that included an arbitration agreement, and she also signed a Form U4, as required by the Financial Industry Regulatory Authority. GCA later fired her, and she brought an action alleging various contract claims, as well as statutory claims under the Equal Pay Act, California's Fair Pay Act, California's Fair Employment and Housing Act, and the Civil Rights Act of 1871. The parties stipulated to arbitrate some of Zoller's claims, but the district court denied GCA's motion to compel arbitration of the statutory employment discrimination and civil rights claims because

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

it held that Zoller did not knowingly waive her right to pursue these claims in court.

The panel stated that, under *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), while not all statutory claims may be appropriate for arbitration, if a party agreed to arbitrate, the party will be held to that agreement unless the party can prove a congressional intent to preclude a waiver of judicial remedies for the statutory rights at issue. Zoller, therefore, carried the burden to show such an intention. *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994), extended *Gilmer* to Title VII claims and held that there must be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived judicial remedies.

The panel assumed, without deciding, that this knowing waiver requirement remained good law and was applicable to the statutes at issue. The panel concluded that the arbitration agreement included clear language encompassing employment disputes, and the evidence showed that Zoller knowingly waived her right to a judicial forum to resolve her statutory claims. Accordingly, the panel reversed the district court's denial of GCA's motion to compel arbitration of these claims.

## COUNSEL

Derek L. Shaffer (argued), Quinn Emanuel Urquhart & Sullivan LLP, Washington, D.C.; Diane Doolittle, Kevin P.B. Johnson, and Brian C. Cannon, Quinn Emanuel Urquhart & Sullivan LLP, Redwood City, California; for Defendants-Appellants.

Michael Rubin (argued), Altshuler Berzon LLP, San Francisco, California; Peter Rukin, Rukin Hyland & Riggin LLP, Oakland, California; Linda D. Friedman and Matthew J. Singer, Stowell & Friedman Ltd., Chicago, Illinois; for Plaintiff-Appellee.

## OPINION

WALLACE, Circuit Judge:

Shannon Zoller is a former corporate attorney who became an investment banker with GCA Advisors, LLC (GCA) in March 2014. As part of her contract, Zoller signed an agreement that set her compensation and benefits, as well as provided that all disputes arising from her employment would be resolved through binding arbitration. Zoller also signed a second document that specified the arbitration procedures. Zoller committed to "final and binding arbitration" of

> [A]ny controversy or claim relating to or arising out of [her] employment with the Company, the termination of [her] employment, the Letter Agreement governing [her] employment with the Company or its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation in connection with the Letter Agreement's provisions.

Zoller also signed a Form U4, as required by FINRA.[1] The form contained an arbitration provision where she agreed to "arbitrate any dispute, claim or controversy that may arise between [her] and [GSA] . . . that is required to be arbitrated under the rules, constitutions, or by-laws" of the self-regulatory organizations, including FINRA. Zoller received a FINRA Rule 2263 disclosure specifying that a "claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is *not required to be arbitrated under FINRA rules*. Such a claim *may* be arbitrated at FINRA *only if the parties have agreed to arbitrate it*, either before or after the dispute arose." FINRA Rule 13201 also states that if the parties agreed to arbitrate statutory employment discrimination claims, "the claim will be administered under Rule 13802." FINRA Rule 13802 also clarifies that it "applies to arbitrations involving a claim of statutory employment discrimination as defined in Rule 13100(bb)."

In July 2016, GCA fired Zoller. Despite the arbitration agreement, Zoller brought an action in federal district court alleging various contract claims, as well as claims of gender discrimination, denial of equal pay, a conspiracy to violate her civil rights, and a failure to prevent that conspiracy. Zoller and GCA filed a joint stipulation to arbitrate some of her claims, but she refused to arbitrate statutory claims. Zoller has contended that the following statutory claims should be considered by the judiciary rather than an arbitrator: (1) Equal Pay Act claim, pursuant to 29 U.S.C. § 206(d)(1), 216(b); (2) Fair Pay Act claim, pursuant to Cal.

---

[1] FINRA is the Financial Industry Regulatory Authority, an independent nongovernmental organization that writes and enforces the rules governing registered brokers and broker-dealer firms in the United States.

Labor Code § 1197.5; (3) Fair Employment and Housing Act claim, pursuant to Cal. Government Code § 12940(a); and (4) Civil Rights Act of 1871 claims, pursuant to 42 U.S.C. §§ 1985(3), 1986. GCA moved to compel arbitration. The district court denied GCA's motion to compel because it held that Zoller did not knowingly waive her right to pursue these claims in court. GCA appeals from the district court's denial of its motion to compel arbitration.

We have jurisdiction pursuant to 9 U.S.C. § 16. We review the district court's denial of the motion to compel arbitration de novo. *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1091 (9th Cir. 2014). The district court's factual findings are reviewed for clear error, unless no facts are in dispute, in which case our entire review is de novo. *Id.* Determinations of arbitrability are also reviewed de novo. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (observing that the "standard for demonstrating arbitrability is not high . . . . [so that] district courts [must] direct the parties to procced to arbitration on issues as to which an arbitration agreement has been signed"). We reverse the district court's denial and remand with instructions to send Zoller's statutory claims to arbitration.

## I.

The Federal Arbitration Act (the Act) governs arbitration agreements in contracts evincing "a transaction involving commerce." 9 U.S.C. § 2. The Act declares a "liberal federal policy favoring arbitration" and provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and quotation marks omitted); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)

(holding that the Act emphatically favors arbitration). Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Zoller bears the burden of proving that her statutory employment discrimination and civil rights claims are not suitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

Zoller and GCA agree that the arbitration agreement is valid and enforceable as it pertains to Zoller's non-statutory claims. However, Zoller argues that her statutory claims are not within the scope of the agreement, or, in the alternative, that she did not knowingly waive judicial determination of these statutory claims. The knowing waiver doctrine is our judicially created requirement that narrows the Act's scope when other federal statutes explicitly limit the enforcement of arbitration agreements. The standard requires a party to an arbitration agreement to waive knowingly and explicitly their right to judicial determination of their Title VII claims. *See Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997); *Renteria v. Prudential Ins. Co. of America*, 113 F.3d 1104 (9th Cir. 1997); *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299 (9th Cir. 1994).

The Supreme Court has held that, while not all statutory claims may be appropriate for arbitration, if a party agreed to arbitration, the party will be held to that agreement unless the party could prove a congressional intent to preclude a waiver of judicial remedies for the statutory rights at issue. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citations omitted). Zoller, therefore, carries the

burden to show such an intention, which would be discoverable in the text of the statutes creating her private right of action, the respective legislative histories, or an "inherent conflict" between arbitration and the statutes' underlying purposes. *Id.* (citation and quotation marks omitted). *But see E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 752–53 (9th Cir. 2003) (en banc) (holding that we were precluded from considering the legislative history of section 118 of the Civil Rights Act of 1991 to determine whether compulsory arbitration was precluded because the statute's text is unambiguous). We have been directed to keep in mind the federal policy favoring arbitration throughout the inquiry and to avoid generalized attacks on arbitration. *Gilmer*, 500 U.S. at 26, 30.

We extended the *Gilmer* holding to Title VII claims. *Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932, 935 (9th Cir. 1992). We have interpreted *Gilmer* to stand for the proposition that "individuals may contractually agree to arbitrate employment disputes and thereby waive the statutory rights to which they would otherwise be entitled." *Lai*, 42 F.3d at 1303 (citation omitted). We also added our interpretation in *Lai*. We held that

> Congress intended there to be *at least a knowing agreement* to arbitrate employment disputes before an employee may be deemed to have *waived* the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes. *Such congressional intent*, which has been noted in other judicial decisions, *is apparent from the text and legislative history of Title VII*.

*Id*. at 1304 (analyzing the Age Discrimination in Employment Act of 1967, as well as Section 118 of the Civil Rights Act of 1991 because it amended several sections of Title VII) (emphasis added); *see also* § 118 of Pub. L. 102–166, set forth in the notes following 42 U.S.C. § 1981 (Supp.1994) ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolutions including, . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title."); Statement of the President of the United States, Signing Ceremony, Pub. L. No. 102–166 (Nov. 21, 1991), reprinted in 1991 U.S.C.C.A.N. 768, 769; Cong. Rec. S. 15472, S. 15478 (Daily Ed. October 30, 1991, statement of Senator Dole) (declaring that arbitration provisions are valid only "where the parties *knowingly and voluntarily* elect to use these methods.") (emphasis added).

We reasoned in *Lai* that these congressional concerns that "Title VII disputes be arbitrated only 'where appropriate,' and only when such a procedure was knowingly accepted, reflects our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes. . . . This is a policy that is at least as strong as our public policy in favor of arbitration." *Lai*, 42 F.3d at 1305. We concluded that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration." *Id.*

After establishing the knowing waiver requirement, we held that Lai and Viernes could not have understood that signing the U4 form included an agreement to arbitrate sexual discrimination actions because the form did not describe the types of actions subject to arbitration. *Id.* We

also observed that, even if Lai and Viernes had signed a contract containing the NASD arbitration clause, it would not have provided them with the requisite notice because the provision did not refer to employment disputes. *Id.* We also remarked that it was noteworthy that Lai and Viernes were directed to sign the U4 form in a specific place without being given an opportunity to read the form, and they were not provided a copy of the NASD Manual that contained the actual terms of the arbitration agreement. *Id.* at 1301.

We narrowed *Lai*'s holding in *Renteria* and explained that the knowing waiver requirement "applies only to a comparatively small class of claims arising under Title VII or similar laws—and derives from a recognition of the importance of the federal policy of protecting the victims of discrimination. Accordingly, *Lai* would have no bearing on various other classes of claims[.]" *Renteria*, 113 F.3d at 1107. In *Nelson*, we applied the knowing waiver requirement to the Americans with Disabilities Act because the parties agreed it applied. 119 F.3d at 761. We did not conduct the same statutory analysis or review of the legislative history in our determination that the requirement applied because we held that the statutory language was analogous to Title VII's language. *Id.* at 761 n. 9. We concluded that Nelson did not knowingly waive his right to judicial consideration of his claims pursuant to the Americans with Disabilities Act because the acknowledgement of receipt of the revised employee handbook, which contained an arbitration clause, was not a valid waiver. *Id.* at 761–62 (observing the acknowledgement form only required that he read and understood the handbook rather than his agreement to be bound by the provisions therein).

More recently, we held in *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1324–26 (9th Cir. 2015), that the knowing waiver requirement applied to Ashbey's Title VII statutory claims; nonetheless, we concluded that he had knowingly waived his right to a judicial forum because he signed an acknowledgement form that explicitly notified him of the dispute resolution policy. We observe a tension between *Ashbey* and our prior decision in *Luce Forward* regarding the proper statutory interpretation method for Section 118 of the Civil Rights Act of 1991 to determine whether the standard applies. *Compare Ashbey*, 785 F.3d at 1323–24 *with Luce Forward*, 345 F.3d at 751–53. Regardless, we need not reach it to resolve this appeal.

## II.

The district court here agreed with Zoller that the knowing waiver standard applies and reasoned that the agreement's reference to the FINRA rules indicated the way arbitration would be conducted rather than the matters subject to arbitration. The district court applied the standard to Zoller's statutory claims based upon decisions from other district courts within our circuit, and it determined that Zoller's claims are analogous to other circumstances in which we have held that a knowing and express waiver is required. However, the district court did not conduct a statutory analysis or legislative history review of the implicated statutes as we did in *Lai* and *Renteria* to determine whether the knowing waiver requirement was available. *See Renteria*, 113 F.3d at 1105–08 (9th Cir. 1997); *Lai*, 42 F.3d at 1304–05 (9th Cir. 1994). Rather, the district court relied on our broad statement in *Nelson* that civil rights claims generally should not be compelled to arbitration unless the knowing waiver requirement is satisfied. *See Nelson*, 119 F.3d at 762 ("Any bargain to

waive the right to a judicial forum for civil rights claims, including those covered by the ADA, in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question").

While GCA challenges the district court's application of the knowing waiver standard to Zoller's claims and the validity of the knowing waiver requirement, we do not reach these issues. We assume, without deciding, that the knowing waiver requirement remains good law and is applicable to these statutes despite the district court's failure to utilize the proper analysis to establish that the standard applies to these statutory claims. Instead, we hold that this appeal is resolved on the arbitration agreement's clear language encompassing employment disputes and evidence that Zoller knowingly waived her right to a judicial forum to resolve her statutory claims.

Ultimately, the facts here are easily distinguishable from our prior decisions holding that a plaintiff did not knowingly waive judicial consideration. Both the employment agreement and the confidentiality, non-solicitation and arbitration agreement included explicit language regarding employment disputes so that Zoller's statutory claims are clearly encompassed by the agreement. *See Gilmer*, 500 U.S. at 20, 23. The clear terms of the arbitration provisions also state that the enforcement or interpretation of the Letter Agreement "shall be exclusively settled by final and binding arbitration[.]" In addition, the circumstances surrounding Zoller's review and acceptance of the documents, and the documents themselves, are undeniably different from the circumstances in *Lai*, *Renteria*, and *Nelson*.

First, Zoller had full access to the various documents with arbitration provisions and was given "the opportunity to consult with legal counsel of [her] choice before signing" both the contract and the employee confidentiality, non-solicitation and arbitration agreement. Second, Zoller did not sign acknowledgement of receipt forms or a vague U4 form; she signed and accepted multiple documents with parallel arbitration provisions that tied arbitration to employment disputes. Third, the FINRA Rule 2263 disclosure form did not prohibit arbitration of employment discrimination claims; it merely held that FINRA could arbitrate these claims if the parties agreed to such arbitration. Therefore, the district court also erred in holding that the arbitration agreement's reference to the FINRA rules related to the way arbitration would be conducted rather than the matters subject to arbitration. Furthermore, Zoller's alleged subjective misunderstanding of the documents is not dispositive because our analysis rests on the explicit terms of the agreement. *See Renteria*, 113 F.3d at 1108. It is clear from the terms of these arbitration provisions that employment discrimination and civil rights claims arising from her employment are encompassed.

### III.

We reverse the district court's denial of GCA's motion to compel arbitration of Zoller's statutory employment discrimination and civil rights claims because employment disputes are encompassed by the arbitration provisions, and she knowingly waived her right to a judicial forum. We remand these claims to the district court with the direction that all claims be sent to arbitration and the case be dismissed without prejudice.

**REVERSED and REMANDED.**